IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

MICHAEL DRIES,

                        Plaintiff,                        OPINION & ORDER

  v.

                                                      15-cv-233-wmc
ONEBEACON AMERICA INSURANCE
COMPANY,

                        Defendant.
_____

On September 18, 2014, plaintiff Michael Dries was involved in a traffic accident and sustained multiple injuries. This lawsuit arises from defendant OneBeacon America Insurance Company's ("OneBeacon") alleged refusal to pay insurance benefits due Dries under an Occupational Accident Policy issued to FAF, Inc., the company for whom he was working as a truck owner-operator at the time of his accident.[1] Because that policy contains an arbitration provision, OneBeacon has moved to compel arbitration of Dries's lawsuit and dismiss this case. (Dkt. #3.) Because the presumption in favor of arbitration controls here

---

[1] The court exercises diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). (*See* Notice of Removal (dkt. #1) ¶¶ 12-14.) There is, however, competing authority as to the source of authority upon which district courts should rely in granting a motion to compel arbitration:

> Some courts have taken the view that, if a district court determines that parties have agreed to arbitrate a dispute, the district court, at least temporarily, no longer has the authority to resolve arbitrable claims. *See* 9 U.S.C. § 3. Those courts consider that such a determination is jurisdictional and therefore, a Rule 12(b)(1) dismissal is appropriate. Other courts characterize the action as the plaintiff's failure to state a claim cognizable in federal court, a Rule 12(b)(6) dismissal. Indeed, there is authority indicating that the dismissal is entirely separate from the Rule 12(b) rubric.

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 (7th Cir. 2005) (footnotes omitted). Defendant relies on Rule 12(b)(3), which the Seventh Circuit has also held is an appropriate ground for a request to compel arbitration. *Id.* at 733; *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011). In this case, the source of authority makes no difference in the overall analysis. In any event, since the Seventh Circuit has expressly sanctioned the use of Rule 12(b)(3) in deciding motions to compel arbitration, the court need not address the question further.

and the compelled arbitration should cover the parties' entire dispute, the court will grant both motions, subject to reopening upon good cause shown.

## ALLEGATIONS OF FACT

Plaintiff Michael Dries is a resident of Sparta, Wisconsin. Defendant OneBeacon is a foreign insurance company with its state of incorporation and principal place of business both in the State of Pennsylvania. On April 1, 2010, OneBeacon issued an Occupational Accident Policy ("the Policy") to FAF, Inc. The Policy provides coverage to owner-operators, including but not limited to an Accidental Medical Expense Benefit and a Temporary Total Disability Benefit.

The Policy was still effective when Dries was involved in an accident while driving his truck on Interstate 80. He suffered multiple injuries, including a lumbar burst fracture at L2 of the spine. Due to those injuries, he has been unable to work and has incurred substantial medical expenses.

On September 22, 2014, Dries provided a Claim Form - Occupational Accident, as an owner-operator under the Policy, to Brentwood Services, Administrators, Inc., one of OneBeacon's third-party administrators. After OneBeacon declined to provide coverage to Dries, he brought this suit in state court, alleging this denial constituted a breach of the Policy. He also alleges a separate claim for bad faith, asserting that OneBeacon has no reasonable basis for refusing to provide Dries with benefits to cover his medical expenses and temporary total disability.

2

Dries attached the Policy to his complaint, making it "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In its Section VIII, entitled "Claims Provisions," the Policy includes a provision entitled "Arbitration." That provision reads:

> Any contest to a claim denial under this **Policy** will be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The arbitration will occur at the offices of the American Arbitration Association nearest to the **Insured Person** or the person claiming to be the beneficiary. The arbitrator(s) will not award consequential or punitive damages in any arbitration under this section. This provision does not apply if the **Insured Person** or the person claiming to be the beneficiary is a resident of a state where the law does not allow binding arbitration in an insurance policy, but only if this **Policy** is subject to its laws. In such a case, binding arbitration does not apply.
>
> This Arbitration provision permanently bans the institution of any individual or class action lawsuit brought by the **Insured Person** or beneficiary. With this binding Arbitration provision, the **Insured Person** is waiving his or her right to a trial by jury.

(Policy (dkt. #1-2) 22 (emphasis in original).)

OPINION

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, this court *must* compel arbitration where: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) plaintiff has refused to proceed to arbitration in accordance with the arbitration agreement.[2] *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d

---

[2] When parties agree to arbitrate "gateway" questions about arbitrability of claims and the scope of an arbitration agreement, the court must enforce that agreement. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (recognizing that "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" (internal quotation marks omitted)). Moreover, courts should not assume that "the parties agreed to arbitrate arbitrability unless there is 'clea[r] and

577, 580 (7th Cir. 2006); *Ineman v. Kohl's Corp.*, No. 14-cv-398-wmc, 2015 WL 1399052, at *3 (W.D. Wis. Mar. 26, 2015). As already alluded to, the FAA also established a presumption in favor of arbitration, meaning that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

The central point of contention with respect to the question of arbitration here is whether Dries's claims fall within the scope of the Policy's arbitration provision. Dries concedes that his breach of contract claim constitutes a "contest to a claim denial" and is, therefore, subject to the Policy's arbitration provision. He argues, however, that his bad faith tort claim is *not* a "contest to a claim denial" and falls outside the scope of the agreement to arbitrate. This much is surely correct under Wisconsin law. Indeed, the Wisconsin Supreme Court has explicitly recognized a tort claim for bad faith in the insurance context is independent of any underlying breach of contract. *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 11, 249 Wis. 2d 623, 638 N.W.2d 575 (citing *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 696, 271 N.W.2d 368 (1978)). "[B]ad faith is an intentional tort and . . . a bad faith action may 'result in not only compensatory damages, but also punitive damages and damages for emotional injury.'" *Id.* at ¶ 14 (quoting *Anderson*, 85 Wis. 2d at

---

unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). Since neither party argues that they have agreed "to arbitrate arbitrability," nor points to any evidence supporting that finding, the court also does not address that possibility further.

694).  "If an insured successfully proves that the insurer intentionally denied a claim without a reasonable basis, the insured is entitled to recover all damages [that] are the proximate result of the insurer's bad faith."  *Id.* at ¶ 37.

Thus, Dries contends that his claim for breach of contract is meaningfully distinct from his claim for bad faith, with the former focusing on his contractual rights under the Policy and the latter on the intentional, tortious acts of the insurer.  Dries also contends that the differences in damages available demonstrate that a bad faith claim is something "more than a *contest to a claim denial*."  (Pl.'s Br. Opp'n (dkt. #8) 4 (emphasis in original).)  As OneBeacon points out, however, a party may not avoid arbitration by casting its complaint in terms of tort rather than contract, *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993), and when multiple claims depend on a single underlying act, it is illogical to conclude some are arbitrable and others are not, *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999).

In fairness to Dries, *Sweet Dreams* and *Kiefer are* distinguishable from this case in at least one material respect:  the arbitration provisions in those cases are significantly broader than the provision in the Policy here.  *See Kiefer,* 174 F.3d at 909 ("Any controversy or claims arising out of or relating to [the Distributorship] Agreement or the Letter Agreement shall be settled by arbitration[.]"); *Sweet Dreams,* 1 F.3d at 641 ("Any disputes arising out of the agreement shall be settled and determined by the American Arbitration Association[.]").[3]  In contrast to the provisions in *Sweet Dreams*, *Kiefer* and the other cases

---

[3] The same is true of the other district court decisions that OneBeacon cites.  *See Felland v. Clifton*, No. 10-cv-664-slc, 2013 WL 3778967, at *2 (W.D. Wis. July 18, 2013) ("In case of any conflict or controversy that may arise as regards the interpretation or compliance hereof, the parties irrevocably subject themselves, on first instance to an arbitration process."); *Svedala Indus., Inc. v. Home Ins. Co.*, 921 F. Supp. 576, 578 (E.D. Wis. 1995) ("[I]f any dispute shall arise between the Company [Home]

5

cited in footnote three, the arbitration provision in this case applies not to any "dispute" that "relates to or arises under" the Policy, but *only* to any "contest to a claim denial." If nothing else, the specific reference to a particular type of claim suggests that the arbitration provision in the Policy is narrower than the provisions the Seventh Circuit has previously characterized as "extremely broad and capable of an expansive reach." *Kiefer*, 174 F.3d at 909; *see Sweet Dreams*, 1 F.3d at 643 ("[C]ontracting parties control their own fate when it comes to deciding which disputes to consign to arbitration. On the one hand, they may delineate precisely those claims that are subject to arbitration or, on the other, they may employ general—even vague—language in their arbitration provisions.").

Even though OneBeacon relies on distinguishable contract language from other cases, arbitration remains heavily favored under federal law. "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer*, 174 F.3d at 909 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). The court is not persuaded that Dries has met this heavy burden. To the contrary, while a claim for bad faith in denying insurance benefits is *legally* distinct from a breach of contract claim under Wisconsin law, both necessarily involve a "contest" between the parties over (or to) "a claim denial." Indeed, the Wisconsin Supreme Court stated in *Brethorst v. Allstate Property & Casual Insurance Co.*, 2011 WI 41, ¶ 56, 334 Wis. 2d 23, 798 N.W.2d 467, that "[t]he fact that a first-party bad faith claim is a separate

---

and the Insured [Svedala] with reference to the interpretation of this Agreement, or their rights with respect to any transaction involved, . . . such dispute upon the written request of either party, shall be submitted to three arbitrators.") (alterations in original); *Slinger Mfg. Co. v. Nemak, S.A.*, No. 08-C-656, 2008 WL 4425889, at *3 (E.D. Wis. Sept. 24, 2008) ("The English version of the Contract between Slinger and ZYNP provides for the arbitration of any 'disputes, controversies or claims arising from this Agreement[.]'").

tort and may be brought without also bringing a breach of contract claim, does not change the fact that first-party bad faith cannot exist without some wrongful denial of benefit under the insurance contract." *See also id.* at ¶ 65 ("In sum, we conclude that some breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured."); 2 Arnold P. Anderson, *Wisconsin Insuranec Law* § 9.4, at 5 (6th ed. 2010) ("Three elements are needed to establish the tort of bad faith: (1) the terms of the policy obligated the insurance company to pay the claim; (2) the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.").

  Consistent with *Brethorst*, Dries's bad faith claim *can* be said to constitute a "contest to a claim denial." As a matter of Wisconsin law, to succeed on his claim of bad faith, Dries will need to contest -- and contest successfully -- the denial of his claim. *Id.* at ¶ 65. He will need to prove other things, as well -- the lack of a reasonable basis in law or fact for the denial, as well as actual knowledge or reckless disregard on OneBeacon's part -- but the addition of those elements does not in any way negate the need to contest the claim denial. That fact is enough to render the arbitration provision in the Policy "susceptible of an interpretation that covers the asserted dispute." *Kiefer*, 174 F.3d at 909 (quoting *United Steelworkers*, 363 U.S. at 582-83).

  Dries next argues that should the court find the arbitration provision covers the tort claim for bad faith, that provision is unenforceable, because it is against public policy. The FAA states that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

§ 2. The "savings clause" at the end of § 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Though neither party addresses the question, before deciding whether this exemption applies to Dries's bad faith claim, the court must first determine whether this question is for the court or the arbitrator to decide. "The division of labor between courts and arbitrators is a perennial question in cases involving arbitration clauses." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010). "There are two types of validity challenges under § 2 [of the FAA]: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). The former is a general question for the court; the latter, for the arbitrator. *Id.*; *Janiga*, 615 F.3d at 737 ("The Supreme Court has said that the responsibility to determine the validity of the contract as a whole is assigned to the arbitrator, while specific challenges to an arbitration clause normally remain with the court.") (citing *Rent-A-Center*, 561 U.S. 63).

Here, Dries raises a challenge specific to the arbitration provision by contending not that the whole Policy is invalid, but rather that the Policy's limitation on the arbitrator's ability to award punitive and consequential damages renders the *arbitration* provision

8

invalid. More specifically, Dries argues that by sending his bad faith tort claim to arbitration (where available damages may be limited), the court would effectively exculpate OneBeacon from bad faith liability, violating Wisconsin public policy in favor of "redress[ing] all economic harm proximately caused by an insurer's bad faith."[4] *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 570, 547 N.W.2d 592 (1996). Thus, the court proceeds to consider the narrow question of whether the parties' *agreement to arbitrate* is invalid in light of the damages limitations.

As an initial matter, parties who agree to arbitrate a dispute can also agree to limit the arbitrator's discretion to award a particular remedy. See *Hennessy Indus. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 770 F.3d 676, 679 (7th Cir. 2014). Here, the damages restriction does not completely exculpate OneBeacon from liability on Dries's bad faith claim, as damages available to plaintiffs include contract damages, *see Jones* 2002 WI 11 at ¶ 34, and attorney fees, *see Roehl Transport Inc. v. Liberty Mutual Insurance Co.*, 2010 WI 49, ¶ 183, 325 Wis. 2d 56, 784 N.W.2d 542. Accordingly, the damages limitation does not clearly violate Wisconsin public policy against exculpatory clauses because OneBeacon does not waive liability for intentionally denying insurance benefits in bad faith. See *Atkins v. Swimwest Family Fitness Ctr.*, 2005 WI 4, ¶ 19, 277 Wis. 2d 303, 691 N.W.2d 334.

Moreover, a contract provision must be both procedurally and substantively unconscionable to be invalid as under Wisconsin law. *Wis. Auto Title Loans, Inc. v. Jones*,

---

[4] In *Rent-A-Center* itself, the Supreme Court strongly suggests that this sort of challenge is a matter for the court. 561 U.S. at 74 ("Jackson's other two substantive unconscionability arguments assailed arbitration procedures called for by the contract—the fee-splitting arrangement and the limitations on discovery—procedures that were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision. It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court.").

2006 WI 53, ¶ 29, 290 Wis. 2d 514, 714 N.W.2d 514.  In addition to plaintiff's inability to establish that the arbitration agreement operates to waive his substantive right to maintain a bad faith claim, the record lacks the hallmarks of procedural unconscionability.  *See, e.g., Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶¶ 49-53, 290 Wis. 2d 514, 714 N.W.2d 514 (upholding the lower court's finding of procedural unconscionability when experienced lender offered "take-it-or-leave-it" loan agreement to indigent borrower).  In any event, plaintiff has not satisfied his burden of establishing unconscionability as the party opposing arbitration.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).  Accordingly, the arbitration provision is enforceable, and the court is required to grant the motion to compel arbitration under § 4 of the FAA.

In finding the *arbitration provision* enforceable, however, the court does *not* hold that the limitation on damages is either enforceable or unenforceable.  "Once the court determines that an arbitration clause is enforceable, the status of the other contract terms is for the arbitrator to decide."  *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 807 (7th Cir. 2003) (quoting *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 844 (7th Cir. 1999)); *see also Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1030-31 (11th Cir. 2003) (collecting cases).  Thus, the adequacy of the available arbitration remedies "must first be considered by the arbitrator."  *Hawkins*, 338 F.3d at 807.

For this court to "rule on the adequacy of procedures or contractual remedies when a protocol has not yet been set up and a remedy has [not yet] been awarded, denied, or deemed waived" would be "to issue an advisory opinion."  *Reynolds v. Cellular Sales of Knoxville, Inc.*, No. 13-cv-32-WTL-WGH, 2013 WL 3780889, at *2 n.5 (S.D. Ind. July 18, 2013); *see also Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 639 (7th

Cir. 2011) ("The only question that a court should address before arbitration starts is whether the parties have agreed to arbitrate at all. . . . BCS and the plans have agreed to arbitrate; the arbitrators themselves resolve procedural questions in the first instance (and usually the last instance.") (internal citation omitted).  That, the court will not do, particularly when a finding by the arbitrator that coverage under the Policy is unavailable to the plaintiff as a matter of contract law would render moot his bad faith claim sounding in tort.  Of course, Dries is free to argue that the waiver of punitive and consequential damages is impermissible, but that, too, is a question in the first instance for the arbitrator, not this court.[5]

Finally, Dries asks the court to stay this action pending the conclusion of the arbitration proceedings.  There is much to favor a stay.  First, the FAA states in relevant part that if a court refers a matter to arbitration, then it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Second, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright."  *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005)).  There is, however, "a growing trend among federal courts, in this and other circuits, favoring dismissal of a case when all of the claims are subject to arbitration."  *Felland v. Clifton*, No. 10-cv-664-slc, 2013 WL 3778967, at *11 (W.D. Wis. July 18, 2013).

---

[5] In order to protect his right to limited judicial review, Dries obviously should urge the arbitrator to make specific findings, which under the circumstances the arbitrator should honor, as to each liability claim and any damage award or denial, including whether the finding turned on a factual or legal issue or both.

11

"Although the Seventh Circuit has yet to hold outright that dismissal of a suit is appropriate when all claims are subject to arbitration, it has affirmed district courts' dismissals of suits when a court finds that all of the claims are arbitrable." *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008 (N.D. Ill. 2013) (citing *Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002)). In accordance with that trend, this court has previously found it appropriate to dismiss [an] action subject to reopening upon good cause shown for purposes of confirmation of or challenges to the arbitration award." *Ineman v. Kohl's Corp.*, No. 14-cv-398, 2015 WL 1399052, at *5 (W.D. Wis. Mar. 26, 2015).

Dries argues that he cannot be fully compensated in arbitration, again due to the waiver of punitive and consequential damages under the Policy, and so this court will be required to take up the adequacy of remedies after arbitration is complete. There is no guarantee this will be the case, however: Dries may not prevail on one or more of his liability claims in arbitration, or the arbitrator may conclude, in reviewing the adequacy of the remedies available, that the waiver of punitive and consequential damages is unenforceable. In any event, Dries is free to petition the court to reopen this matter should he wish to confirm or challenge the arbitrator's award, once issued. *See* 9 U.S.C. § 9 (any party may apply to the court for an order confirming award); *id.* at § 10 (court may vacate the arbitrator's award upon application of any party for one of the enumerated reasons); *id.* at § 11 (court may modify or correct arbitrator's award upon application of any party for one of the enumerated reasons). Because all of Dries's claims are subject to arbitration in

the first instance, however, this court will grant defendants' request to dismiss subject to reopening upon good cause shown.

ORDER

IT IS ORDERED that:

1) Defendant OneBeacon America Insurance Company's motion to dismiss and compel arbitration (dkt. #3) is GRANTED; and

2) The clerk of court is directed to close this case, subject to reopening upon good cause shown.

Entered this 25th day of February, 2016.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge